UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------:

UNITED STATES OF AMERICA, : Case No.:23-MJ-2007

Plaintiff, :

-against- :

YANPING WANG, : New York, New York

Defendant. : March 15, 2023

--------------------------------: Conference

PROCEEDINGS BEFORE

THE HONORABLE KATHERINE H. PARKER

UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff: UNITED STATES ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF NEW YORK
BY: Juliana Murray
Ryan B. Finkel
Micah F. Fergenson
One St. Andrew's Plaza
New York, New York 10007

For Defendant: CHAUDHRYLAW PLLC
BY: Priya Chaudhry
147 West 25th Street
New York, New York 10001

For Defendant: Lipman Law PLLC
BY: Alex Lipman
147 West 25th Street
New York, New York 10001

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

THE DEPUTY CLERK: Calling Case 23-MG-2007, U.S. versus Yanping Wang.

MS. MURRAY: Good afternoon, Your Honor. Juliana Murray, Ryan Finkel and Micah Fergenson on behalf of the United States.

THE COURT: Good afternoon.

THE DEPUTY CLERK: And counsel for Ms. Yang, can you -- Ms. Wang, can you state your appearance for the record.

MS. CHAUDHRY: Good afternoon, Your Honor. Priya Chaudhry of ChaudhryLaw, along with Alex Lipman of Lipman PLLC. We are representing Yvette Wang, who is present, seated between us, and being assisted by a Mandarin interpreter.

THE COURT: Good afternoon.

MR. LIPMAN: Good afternoon, Your Honor.

THE COURT: Good afternoon, Ms. Wang. I'm Judge Parker. Can you clearly hear the interpreter?

THE DEFENDANT: Yes.

THE COURT: Okay. Great.

You've been arrested based on charges filed against you in a complaint. The purpose of the proceeding today is to inform you of certain

rights that you have, inform you of the charges against you, consider whether counsel should be appointed for you, and decide under what conditions, if any, you shall be released pending trial.

Can I please have the date and time of arrest.

MS. MURRAY: Yes, Your Honor. The defendant was arrested this morning at approximately 6:00 a.m.

THE COURT: I'm now going to explain certain constitutional rights that you have.

You have the right to remain silent. You're not required to make any statements. Even if you've already made statements to the authorities, you're not required to make any further statements. Any statements you do make can be used against you.

You have the right to be released with or without conditions imposed pending trial, unless I find that there are no conditions that would reasonably assure your presence at future court appearances and the safety of the community. If you are not a U.S. citizen, you have the right to request that a government attorney or a law-enforcement official notify a consular officer from your country of origin that you've been

arrested. And in some cases, a treaty or other agreement may require the U.S. government to give that notice, whether you request it or not.

You have the right to be represented by an attorney during all court proceedings, including this one, and during all questioning by the authorities. You have the right to hire your own attorney, but if you cannot afford one, the Court will appoint one to represent you.

Do you understand your rights as I've just explained them?

THE DEFENDANT: I understand.

THE COURT: Okay. Now, I understand you've retained counsel, so there's no -- is that correct? I don't have any financial affidavit.

THE DEFENDANT: That's correct.

THE COURT: Yes, right. Okay.

So now I'm going to review the charges in the complaint. The complaint charges you with conspiring with others to commit wire fraud and securities fraud in violation of Title 18 of the United States Code § 371.

Count II charges you with committing wire fraud in violation of Title 18 of the United States Code § 1343 and § 2.

Count III charges you with committing securities fraud in violation of Title 15 of the United States Code §§ 78j(b) and 78ff, as well as Title 17 of the Code of Federal Regulations § 240.10(b)(5) and Title 18 of the United States Code § 2.

Count IV charges you with engaging in an unlawful monetary transaction in violation of Title 18 of the United States Code §§ 2 and 1957.

And these charges all relate to your involvement with GTV and a private placement in connection with GTV, and transfer of money associated with that.

Counsel, have you reviewed the complaint with your client with the aid of a Mandarin interpreter?

MS. CHAUDHRY: Your Honor, we have.

THE COURT: And does she waive its public reading?

MS. CHAUDHRY: She does.

THE COURT: Okay. Ms. Wang, do you understand what you're being charged with?

THE DEFENDANT: Yes, I understand.

THE COURT: Okay. Now, in addition to the rights that I've already told you about, you

have the right to a preliminary hearing at which the government will have the burden of showing that there is probable cause to believe that the crime for which you're being charged has been committed and that you're the person who committed it. At the hearing, you and your counsel would be entitled to cross examine any witnesses and introduce evidence.

If you're held in custody, you have the right to a preliminary hearing within 14 days. If you're not in custody, you have the right to a preliminary hearing in 21 days. But a preliminary hearing will not be held if you are indicted by a grand jury before the date of a preliminary hearing. I'll set the date for a preliminary hearing in a moment.

What is the government's position as to bail, detention or release?

MS. MURRAY: Just, first, one note for the record, Your Honor, the defendant is a citizen of China, and consular notification was made this morning of her arrest.

THE COURT: Okay. That's noted for the record. Thank you.

MS. MURRAY: The government has spoken with defense counsel, and we have a largely

agreed-upon bail package. There are two key differences. So I'm happy to address the differences first, if Your Honor would like, and then we can talk through the conditions, or I can take it in the inverse order.

THE COURT: Let's start with what you do agree with, and then you can tell me what you don't agree with.

MS. MURRAY: The government would agree to a personal recognizance bond of $5 million co-signed by two financially responsible persons approved by the government and secured by $1 million in real property and/or cash; an agreement on travel restriction to the Southern and Eastern Districts of New York; the surrender of any travel documents, and that the defendant make no new applications for any travel documents; that the defendant disclose all assets to Pretrial Services and the U.S. Attorney's Office, including any assets over which she has possession, custody or control; and to include any joint or business accounts and any cash, cryptocurrency or digital assets; that the defendant not open any new bank accounts or lines of credit without approval of Pretrial Services; that the defendant have no contact with Ho Wan Kwok, also

known as Miles Guo or Kin Ming Je, J-E, also known as William Je, or any alleged victims or witnesses outside the presence of counsel; and any other conditions recommended by Pretrial Services.

And then, Your Honor, the two points that the parties are not in agreement on -- first, the government would seek home detention, reinforced by GPS location monitoring, and the government would seek that the defendant be detained until all conditions are met.

THE COURT: Okay. Now, am I correct that the crimes for which Ms. Wang is charged are not ones that carry a presumption of detention?

MS. MURRAY: That is correct, Your Honor.

THE COURT: And under the Bail Reform Act, I'm required to release the defendant on the least restrictive means necessary to reasonably assure the defendant's return to court and the safety of the community.

So I'd like to understand first why you believe that home detention with GPS is the least restrictive means necessary to achieve those purposes.

MS. MURRAY: Sure. So with respect to this defendant's risk of flight, the government

certainly thinks there's more than a preponderance of the evidence that the defendant poses a significant risk of flight. The defendant -- even though these are not charges that carry presumption of detention, the defendant is charged with crimes that carry a very large dollar amount. She's charged with a $100 million wire transfer. That's a sole transfer of money that the government alleges is fraud proceeds over which she had sole authority to authorize that wire transfer in addition to the securities fraud and the wire fraud conspiracy.

The defendant has access to significant assets. Some of those are known to the government. Some of them, frankly, may not be known to the government because the defendant and others that she has conspired with operate through the use of extremely sophisticated and complicated shell companies.

So as a few examples for Your Honor, the defendant's apartment was purchased in the name of an LLC that she fully owns. I'm not suggesting that there's anything questionable about that necessarily, but I'm using it as an example of one of more than a dozen entities that we are aware that the defendant either has or had control over,

including financial control. And some of those entities, whether the defendant is the primary shareholder of the entities or has access necessarily to the bank accounts, the defendant certainly has decisive control at least in the corporate documentation over those companies.

The defendant also is not a resident of the United States. There's a pending application for asylum, but the universe within which the defendant and Miles Guo and William Je and others operate is an extensive network that is bolstered by hundreds of thousands of online followers throughout the globe, so it's not limited to the New York area.

We are aware that there are people who support Mr. Guo and Ms. Wang and their comrades, as they call them, throughout, as I mentioned, this global network known as the Himalaya Farm Alliance, and so we have serious reason to believe that there are people in other jurisdictions who would be supportive to Ms. Wang were she to flee and that she has significant assets to be able to flee.

And then I would also note, with respect to risk of flight, the strength of the government's evidence in this case. The Court has before it a complaint, but just to represent to the Court, the

complaint is supported by bank records, bank records the defendant signed. IP logs that indicate that the defendant was the person who authorized the transfer of the $100 million, that she did so from her apartment here in Manhattan, that she had sole authority for numerous bank accounts that were involved in, as alleged, hundreds of millions of dollars worth of fraud.

Another point that we would note for Your Honor are the circumstances of the defendant's arrest this morning. The defendant was arrested in her apartment in Manhattan. She is the -- per the Pretrial Services report, the sole occupant of that apartment. During the search of the apartment, pursuant to a judicially authorized search warrant, the FBI found $138,000, approximately, in cash, that was in a safe, largely in $100 bills. They appeared to be new bills. In that safe, they also found what appeared to be old passports of both Ms. Wang and Miles Guo, or Ho Wan Kwok. So she was holding the old, but the travel documents for both herself and for Mr. Guo, or Mr. Kwok.

They recovered more than, approximately, 12 iPhones. And I think it's important for the Court to note the circumstances that these items

were found in. But more than approximately 12 iPhones, several laptops, and then documents that relate to, among other things, entities involved with the fraud.

The 12 iPhones or so, as an example, were not all in plain view. They weren't all plugged in. Some of them were in what appeared to be original packaging. They appeared to be new. They were inside bags or luggage inside of a closet. And yet, when the FBI searched those phones to determine whether they were, in fact, fresh out of the box or whether they had data, all of those phones had data on them, which, to the government, is powerful evidence of concealment and hiding evidence that we would allege to be certainly evidence of the crimes.

Similarly, laptops and documents were found concealed within the apartment. So, as an example, a laptop was between two sweaters on a shelf in the back of a closet. Documents were found between couch cushions or between the mattress and the bed.

In terms of luxury items, and, again, we would allege it's not consistent with, at least, the defendant's reported income, as we understand it from our evidence, 15 to 20 boxes of Hermes scarves

that seemed to be new, several Hermes wallets, a large Hermes bag. And then additional electronics that we don't yet know what they contain, but multiple terabyte hard drives, multiple flash drives. And then also within the space was contained a pouch that had seven to eight SIM cards.

In light of those circumstances and the defendant's deep connection with numerous shell entities, for lack of ties to the community in the sense of any status within the U.S., her extensive connections to a network of very supportive followers throughout the country and the world. And then also the defendant's role in the charged offenses. She was a signatory, as I mentioned, of numerous accounts, not just the account from which the $100 million was transferred, but the head of the various entities that make up the Kwok or Guo family offices. She had control over those entities. She had authority. She was essentially the chief of staff to Miles Guo or Miles Kwok.

She ran the operations. At certain points when he was operating various of his controlled companies out of a townhouse on the Upper East Side, right near Ms. Wang's apartment, there were several different purported businesses working

out of the same townhouse, and Ms. Wang was the command center. It didn't matter which business. If someone was asking for approval for a wire, approval for a business decision, they would go to her. So she was the one who was tasked with being the primary right-hand person for this billion dollar fraud.

Those are the reasons the government thinks that home detention with GPS monitoring is appropriate. And we also believe that it's important for the conditions to be met and for the government to get comfort that the conditions are met, including the financial bond and the co-signers before the defendant is released.

THE COURT: Okay. Thank you.

I'll hear from defense counsel next.

MS. CHAUDHRY: Thank you, Your Honor. I think the government missed a very big point in their risk of flight argument, which is that Ms. Wang is unique. She's not just a citizen of China that is in the U.S., she is a political refugee. The idea that she would flee to China -- whatever she's looking at in terms of the government's proof in the government's case, what she is looking at if she were to go back to China

ever in this lifetime is much worse, which is why she's seeking political asylum. Going to China is not an option for her. So there is no risk of flight to China in this lifetime for Ms. Wang. That's one.

Two, these passports that were found are old and expired passports. And as the government conceded, Ms. Wang was the chief of staff to Miles Kwok, so having her an his expired passport is not out of the ordinary, since she's also handling their immigration asylum application.

In addition, while the government says that she does have followers, this case, especially Mr. Kwok's case, is going to get so much publicity that it would be very unusual for Interpol to not notice that one of the three very high-profile defendants in this case has crossed a border. She doesn't have any travel documents anymore.

And when we talk about ties to the community, Ms. Wang left China in April of 2015 and has never gone back, ever. Not even to see her father before he died, not to see her own child, who she cannot return to see. She has been in New York, and, in fact, in Manhattan since 2017. And like many New Yorkers, she doesn't drive. She has lived

in this apartment that she owns since 2020. And before that, she rented an apartment in the same building. Pretrial Services has called the building and confirmed that she does, in fact, live there.

And she does have her asylum application in. The interviews are done. So she is actively seeking to not only let the U.S. government know she's here, but to let her stay. This is not someone who is risking going anywhere where China can get their hands on her again.

GPS monitoring for Ms. Wang would assure the government and the Court that we know where she is. It is used for defendants all over this country. It is incredibly effective. I have had clients who face charges in this district who have lived all over the country, and they have faced similar charges, and that was enough to keep them -- to -- sorry -- to secure their return to court. That's something that, I think, Pretrial is able -- hopefully, able to do today before she leaves.

We are happy to agree to the rest of it, but that is asking -- letting her out today, we think is easy to do without the Court really worrying that they will never see her again. And the government's request for home confinement, we

think is also unnecessary, given the effectiveness of the GPS location monitoring.

With the travel restrictions of the Southern and Eastern Districts of New York, that should keep us all aware of Ms. Wang's whereabouts. And, in addition, she has no intention of going anywhere. She has known that the government has been investigating her, and the SEC has been investigating for quite a while, and she has not fled. And she has no intention of fleeing. So for that reason, we would agree to all of that with those two requests for a change, and we would ask to have ten days to get the rest of the conditions met, but to release Ms. Wang on her signature today.

THE COURT: So you don't object to an ankle bracelet, you object to home detention?

MS. CHAUDHRY: Correct.

THE COURT: And Ms. Wang being held until the conditions are met.

MS. CHAUDHRY: That's right.

THE COURT: And do you have financial suretors?

MS. CHAUDHRY: We are working on them. The government has agreed to have a dialogue with us in the next day or two to find people that they --

we offered some people not yet acceptable. We will find people that are acceptable.

THE COURT: What's the value of Ms. Wang's apartment, if anybody -- do you -- does any -- either side know?

MS. CHAUDHRY: It was purchased for just over $1 million. It has no mortgage. And that was in 2020. It is in a desirable building on the Upper East Side, so I assume it's worth at least that right now.

THE COURT: Does the government have any comments in response?

MS. MURRAY: Yes. Thank you, Your Honor. Just briefly, a few points.

One, with respect to Ms. Chaudhry's point about Ms. Wang not looking to go to China anytime soon because of the danger that it poses in light of her status as a political asylee applicant here, I would just note there are other places that Ms. Wang could go to. At least one of her entities is a BVI registered entity. There are connections in this case and with respect to bank account and money and entities that Ms. Wang had access to, to the UAE, including very recent activity in Dubai and the UAE as recently as a couple of days ago, by people who

are involved in these entities and in this fraud scheme.

So the expired passports in the safe, one doesn't need a passport to flee somewhere and then seek asylum in that location. So we would note that we think that there is a significant risk of flight, and Ms. Wang's relationship with China does not mitigate that, particularly in light of her ties to other jurisdictions, including other jurisdictions that do not readily, or even at all, extradite to the United States.

Another couple of points. $130,000 in cash, that seems like an emergency flight fund. That is a lot of cash to be having on hand and indicates to us that, even setting aside the bank accounts that she has control over and access to and the entities that she has control and access to, she has been storing cash for some reason in a safe in her apartment. That gives us grave concerns about potential motivation to flee and also ability to flee on a moment's notice.

With respect to the location monitoring, the GPS bracelet versus home detention reinforced by GPS monitoring, I understand Ms. Chaudhry's point, but a bracelet is relatively easy to cut. I

understand that most people, you know, kind of, comply with the conditions. Our concern here, where we have somebody who had all of that cash just within her apartment is there could be other locations she has access to where she has assets stored away to help her flee. She could cut the bracelet. It's another reason, Your Honor, why it is so important for us to firm up the conditions of the bond that the parties do agree on, including the financial conditions, before Ms. Wang is released so that we have some comfort that we have a sense of what would actually be put up in this case as a bond, and we would have a sense of what controls we would have in place if Ms. Wang were to flee.

And, finally, with respect to the co-signers that the defense counsel has proposed to us, we are more than happy to work with the defense counsel to find co-signers who would be satisfactory to the government. I would note that the two names that were floated today are two people that the government will not accept in light of their own participation in the fraud scheme. So not making any claims about, you know, what Ms. Wang may or may not know about the government's view of those people or its evidence, but it's concerning to us that the

financially responsible persons that she presents today are two people who have been alleged had involvement in the fraud.

THE COURT: Okay. Anything further?

MS. CHAUDHRY: Yes, Your Honor, just on the $138,000 in cash. It is a fact, and I think it's publically known since the GTV cases have gotten some notoriety, that lots of groups, whether they're countries or companies, have taken political stances in this, including various banks that have closed Ms. Wang's bank accounts down, which is why she ended up with a lot of cash in her safe. She has gone through nearly a dozen normal banks, whether it is Bank of America or Santander or -- they just close her accounts down and make her come get her money. So that is one of the reasons that she keeps cash on hand.

And the second thing is the government's entirely speculative claim that there could be other places where she has cash where she could go are just that, they're just speculation. They have been investigating this for a long time. They haven't given the Court a particular place where they think that there's cash. I mean, either they think this is somebody who has followers in the world who could

disappear her or they think she doesn't, but, you know, GPS works for just about every other defendant, and so that -- that would be my response to that.

THE COURT: Okay. Thank you.

I've carefully considered the arguments of the government and defense counsel, and also I consider the recommendations of Pretrial Services. And based on this, I believe that there are conditions that I can impose that will assure Ms. Wang's return to court and the safety of the community. And the conditions that I'm going to impose are the least restrictive I believe are necessary to achieve that purpose. So...

All right. Ms. Wang will be released subject to meeting all of the conditions. In other words, she's going to be detained until all of the following conditions are met: $5 million bond co-signed by two financially responsible persons approved by the government, and it will be secured by $1 million in cash or property. Travel restricted to the Southern District, Eastern District of New York. Surrender all travel documents and make no new applications. Pretrial supervision as directed by Pretrial Services. Home

detention enforced by location monitoring technology as directed by Pretrial Services. Defendant will disclose all assets to Pretrial Services and the U.S. Attorney's Office, including any accounts in her name or controlled by her or by companies in which she has an interest, any cryptocurrency, any cash and any other property.

Ms. Wang shall have no contact with Mr. Kwok or Mr. Je or other co-conspirators outside presence of counsel. She shall have no contact with any alleged victims or witnesses outside presence of counsel. She shall reside at the residence at 188 East 64th Street and may not relocate absent permission from Pretrial Services. Defendant shall not open any new bank accounts, lines of credit or loans without prior approval of Pretrial Services.

Now, is there anything further from the government?

MS. MURRAY: If I may just clarify one condition, Your Honor.

THE COURT: Yes.

MS. MURRAY: With respect to the home detention being reinforced by location monitoring, we would ask that it be reinforced by GPS location monitoring so that it -- I understand that location

monitoring advises when the defendant leaves or returns. We would like to know where she goes when she leaves as well.

THE COURT: Yeah, I'm going to -- I will also order the GPS, but location monitoring also can include standalone monitoring in the home -- at the home if Pretrial Services deems that to be appropriate, and so I'm including that within the bail conditions.

MS. MURRAY: Okay. Thank you, Your Honor.

THE COURT: Okay. Now, Ms. Wang, I assume you're going to be able to meet these conditions at some point, and once you do and when you are released, I need to warn you that failing to appear in court as required can have serious consequences.

If you violate any of the terms of your release, a warrant will be issued for your arrest. You and anyone who signs a bond will each be responsible for paying its full amount. You may be charged with a separate crime of bail jumping, which can mean additional jail time and a fine.

In addition, if you commit any new offense while you're released, in addition to the

sentence prescribed for that offense, you'll be sentenced to an additional term of imprisonment of not more than ten years if it's a felony, and not more than one year if it's a misdemeanor. And this term of imprisonment would be served after any other sentence of imprisonment is completed.

And while you're awaiting trial, I also must warn you not to have any contact with or engage in any intimidation of potential or designated witnesses or jurors, not to engage in any intimidation of any court officer, and not to engage in any conduct that would obstruct any investigation by law enforcement.

What date shall I set for a preliminary hearing?

Defense counsel, do you want to waive to the 30th day for a preliminary hearing? You want the 14th day?

MS. CHAUDHRY: 14th.

THE COURT: Okay. Preliminary hearing is set for March 29.

Anything further from the government?

MS. MURRAY: No, Your Honor. Thank you.

THE COURT: Anything further from defense counsel?

MR. LIPMAN: No. Thank you, Your Honor.

MS. CHAUDHRY: No. Thank you, Your Honor.

THE COURT: All right. Thank you. We're adjourned.

0o0

C E R T I F I C A T E

I, Adrienne M. Mignano, certify that the foregoing transcript of proceedings in the case of USA v. Yanping Wang, Docket No.: 23-MJ-2007 was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature Adrienne M. Mignano
______________________________
ADRIENNE M. MIGNANO, RPR

Date: March 22, 2023