UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>YANPING WANG,<br><br>                    Defendant. | Case No. 23-MJ-2007 |

# DEFENDANT YANPING WANG'S MEMORANDUM OF LAW
# IN SUPPORT OF HER MOTION FOR AN ORDER DIRECTING
# SHE HAS COMPLIED WITH THE TERMS OF HER BAIL CONDITIONS

Priya Chaudhry
CHAUDHRYLAW PLLC
147 W. 25th Street, 12th Floor
New York, New York 10001
Tel: (212) 785-5550
Email: priya@chaudhrylaw.com

Alex Lipman
LIPMAN LAW PLLC
147 W. 25th Street, 12th Floor
New York, New York 10001
Tel: (212) 401-0070
Email: alexlipman@limpanpllc.com

*Attorneys for Defendant Yanping Wang*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................. ii

**INTRODUCTION** .......................................................................................................................1

I.      **FACTUAL AND PROCEDURAL BACKGROUND** .......................................................3

II.     **ARGUMENT** ..................................................................................................................6

      A.     Ms. Wang's Proffered Co-Signers Satisfy the Relevant Legal Standard .........7

      B.     Alternatively, This Court Should Amend Ms. Wang's Bail Conditions to Eliminate Co-Signers Altogether ........................................................................10

**CONCLUSION** ..........................................................................................................................12

## TABLE OF AUTHORITIES

**CASES**

*United States v. Batista*,
   163 F. Supp. 222 (S.D.N.Y. 2001) ................................................................................. 7

*United States v. Gotay*,
   609 F. Supp. 156 (S.D.N.Y. 1985) ................................................................................. 7

*United States v. Hammond*,
   204 F. Supp. 2d 1157 (E.D. Wisc. 2002) ............................................................... 7, 8, 9

*United States v. Penaranda*,
   No. 00-CR-1251 (RWS), 2001 WL 125621, (S.D.N.Y. Feb. 13, 2001) ...................... 10

*United States v. Weigand*,
   492 F. Supp. 3d 317 (S.D.N.Y. 2020) ......................................................................... 11

**STATUTES**

15 U.S.C. § 78ff ..................................................................................................................... 3

15 U.S.C. § 78j(b) .................................................................................................................. 3

17 C.F.R. § 240.10b-5 ........................................................................................................... 3

18 U.S.C. § 1343 ................................................................................................................... 3

18 U.S.C. § 1957 ................................................................................................................... 3

18 U.S.C. § 2 ......................................................................................................................... 3

18 U.S.C. § 3142(c)(2) ............................................................................................... 6, 10, 11

18 U.S.C. § 3142(c)(3) .................................................................................................. 10, 11

18 U.S.C. § 371 ..................................................................................................................... 3

Defendant Yanping Wang, by and through her attorneys, hereby submits this Memorandum of Law in Support of Her Motion for an Order Directing She Has Complied with the Terms of Her Bail Conditions and to rule that the government's refusal to approve her bond co-signers has been arbitrary. In the alternative, Ms. Wang moves this Court to amend her bail conditions to eliminate the requirement that she obtain two financially responsible persons to co-sign her bond.

## INTRODUCTION

Ms. Wang is a political refugee from China because she is a prominent dissident who publicly opposes the Chinese Communist Party ("CCP"). She is a dedicated and well-known member of a political movement whose aim is the overthrow of communist party rule in China. Because she is a political refugee from an oppressive regime, she cannot go back to China; if she did, she would be arrested at the border, detained, and likely shot for her political activism. She is applying for political asylum in the United States. Were she to leave the United States while her asylum application is pending, she would forfeit her asylum application and expose herself to being extradited to China.

Because she is a political refugee, Ms. Wang has no close family in the United States, and her family in China has cut off all contact with her. For example, after multiple arrests because he had maintained contact with her after she fled China, Ms. Wang's husband—who, before their marriage, was her first and only boyfriend—divorced her and cut off all contact. Her only child lives with his father in China, and Ms. Wang has had no contact with her son in nine years; he is just eleven years old. For the same reasons, Ms. Wang has also had to refrain from contact with her only sibling. And when Ms. Wang's father in China was dying of cancer, she was unable to go back to help him or to bury him when he died.

Consequently, Ms. Wang's relational connections in the United States are limited to two groups: (1) the people close with Miles Kwok (the leader of the dissident movement, whom the government views as Ms. Wang's co-conspirator)—who are her only U.S. "family"; and (2) other members of her anti-CCP political movement.  The government will not approve any co-signers who belong to either of these groups, effectively denying Ms. Wang bail.

Specifically, despite an offer of at least eight people willing to co-sign Ms. Wang's $5,000,000.00 bond, the government refuses to approve two co-signers—regardless of their financial condition—because it claims either (1) that people who are close to her (meaning those who have moral suasion over her) cannot co-sign the bond because they are also close to Mr. Kwok (and thus viewed with suspicion by the government); and (2) that other willing co-signers are not close enough to her to have moral suasion over her and/or, in the government's view, are the victims of her alleged crimes.

To be clear, Ms. Wang's bond conditions do not specify who can and cannot serve as a co-signer.  Those who are close to Mr. Kwok and whom the government rejected have not been charged with any crimes, and each of them would be on the hook for $5,000,000.00 if Ms. Wang were to abscond.  In other words, they have moral suasion over her, and they would be severely financially hurt were she to default.  This is all that is required of a co-signer.  Nevertheless, the government has categorically excluded these people from serving as sureties, in most cases without even asking for their financial information.

As for the second group, each of the people the government interviewed was willing and able to sign Ms. Wang's bond and each understands exactly what she and Mr. Kwok are accused of doing.  Nonetheless, they are willing not only to co-sign the bond, but in the case of three of them, they are willing to post their own property as security.  Despite the charges against

Ms. Wang, these proposed co-signers think they have moral suasion over her and that she will not default.  The government thinks it knows better.  In any event, there is also no requirement that all sureties have moral suasion over a defendant or **even know the defendant**.  As discussed below, even one co-signer who has moral suasion over a defendant is sufficient; the second can be anyone.  In short, the government has put Ms. Wang in an impossible situation, effectively denying her bail without legal support for its position.

Ms. Wang has met her bail conditions: she offered at least one person who is a close friend whom she would not want to saddle with a $5,000,000.00 debt, and she offered at least one other co-signer willing to co-sign and post millions of dollars in security for her bond.

This Court should approve two of her proposed co-signers or, alternatively, modify her bail conditions such that her inability to secure co-signers for a $5,000,000.00 bond does not prevent her release.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Ms. Wang is charged by Complaint with (1) conspiracy to commit wire fraud and securities fraud, in violation of 18 U.S.C. §§ 371, 1343; 15 U.S.C. §§ 78j(b) and 78ff; and 17 C.F.R. § 240.10b-5; (2) wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; (3) securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5; and 18 U.S.C. § 2; and (4) unlawful monetary transaction, in violation of 18 U.S.C. §§ 1957 and 2.  (ECF No. 1 at 1).

On March 10, 2023, a warrant was issued for Ms. Wang's arrest and she was subsequently arrested on March 15, 2023.  That same day, at her initial appearance, Magistrate Judge Katharine H. Parker set bail at $5,000,000.00 and required Ms. Wang's bail secured by $1,000,000.00 in cash or property and co-signed by two financially responsible people.  (ECF No. 3).  Additionally, the court ordered Ms. Wang to surrender her travel documents and to make

no new applications for same; to disclose all financial accounts over which Ms. Wang exercises control; pretrial supervision as directed by Pretrial Services ("PTS"); home detention; location monitoring technology as directed by PTS; and GPS tracking. (*Id.*). Finally, Judge Parker ordered Ms. Wang detained until the bail conditions were met. (*Id.*).

On March 20, 2023, Ms. Wang executed an Affidavit for Judgment by Confession with New York Supreme Court, New York County, securing the bond with $1,000,000.00 against her residence.

Beginning March 15, 2023, to secure her release, Ms. Wang put forward qualified individuals to serve as sureties in satisfaction of her bail conditions, all of whom have been arbitrarily rejected by the government. In total, from March 15, 2023, to March 23, 2023 (the date of this filing), Ms. Wang has offered no fewer than eight people who satisfy the legal requirements to serve as co-signers of her bond:

- **Mr. Chris Canada**. Attached hereto as Exhibit A is a true and accurate copy of documents demonstrating his qualifications to serve as a co-signer;[1]

- **Mr. Chunguang Han**. Attached hereto as Exhibit B is a true and accurate copy of documents demonstrating his qualifications to serve as a co-signer;

- **Mr. Defeng Cao**. Attached hereto as Exhibit C is a true and accurate copy of documents demonstrating his qualifications to serve as a co-signer;

- **Mr. Frank Qiang Feng**. Attached hereto as Exhibit D is a true and accurate copy of documents demonstrating his qualifications to serve as a co-signer;

- **Ms. Jian Ping Liu**. Attached hereto as Exhibit E is a true and accurate copy of documents demonstrating her qualifications to serve as a co-signer;

---

[1] All of these documents were provided to the government in connection with its approval process.

4

- **Ms. Yan (Michelle) Lou**.[2] Attached hereto as Exhibit F is a true and accurate copy of documents demonstrating her qualifications to serve as a co-signer;

- **Mr. Yongbing Zhang**. Attached hereto as Exhibit G is a true and accurate copy of documents demonstrating his qualifications to serve as a co-signer; and

- **Ms. Yue Zhou**. Attached hereto as Exhibit H is a true and accurate copy of documents demonstrating his qualifications to serve as a co-signer.

As ordered by the court, Ms. Wang disclosed all her financial information to the government, revealing that her entire financial landscape is comprised of the apartment she lives in (worth over $1,000,000.00), two bank accounts (with balances of $400,000 and $500,000), and $130,000 in cash she kept in her apartment (seized by the government at the time of Ms. Wang's arrest). Furthermore, during defense counsel's interactions with the government regarding the government's review of Ms. Wang's potential co-signers, her counsel offered to post additional security in the form of the bank account which contains approximately $400,000.00. Counsel also offered to pledge $130,000.00 in cash that the government recovered from Ms. Wang's apartment during the search it conducted the day of her arrest. Although counsel could not pledge the only other bank account Ms. Wang owns—because she needs to pay living expenses and fund her defense—counsel offered to allow the government to monitor and pre-approve any spending from the account. The government rejected this proposal, too; it insists on only approving co-signers of its liking, meaning it wants to keep Ms. Wang remanded by making it impossible to meet her bail conditions.

Indeed, the government has rejected all proposals to secure the bond. For example, the government refused a proposal that would have had Ms. Wang's $5,000,000.00 bond secured by

---

[2] Mr. Feng, Ms. Liu, and Ms. Lou have each agreed to secure the bond with unencumbered real estate, and despite their willingness and ability to secure the bond, the government rejected them as co-signers.

5

approximately $4,000,000.00 in cash and real estate. Specifically, counsel proposed securing the bond with: $2,500,000.00 in real estate owned by Ms. Wang's friend and supporter who is a well-known public figure; Ms. Wang's apartment, valued at over $1,000,000.00; and $530,000.00 in cash along with two co-signers. Despite receiving a proposal of collateral four times what the bail conditions require, the government rejected the proposal before it even received any information on the property the public figure offered to post because it has a negative view of the public figure.

Thus, although each of Ms. Wang's proffered sureties is eminently qualified to serve, the government—without legal authority—has refused to accept any of them, resulting in Ms. Wang being detained (effectively) without bail.

**II.    ARGUMENT**

Despite the government's protestations to the contrary, Ms. Wang has satisfied the standard for co-signers under the law. Unless this Court intervenes and approves two of Ms. Wang's co-signers over the government's objection, Ms. Wang will be functionally held without bail in express violation of the Bail Reform Act.

Not only has the government's co-signer blockade kept Ms. Wang from fulfilling her bail conditions, but the government has also put this Court in a position to tacitly violate 18 U.S.C. § 3142(c)(2), which provides that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." Here, the government's unjustifiable refusal to approve even one of Ms. Wang's co-signers has resulted in her inability to post her bond because she does not have sufficient assets to secure the bond herself.

### A.     Ms. Wang's Proffered Co-Signers Satisfy the Relevant Legal Standard

The law is clear.  Only one of Ms. Wang's co-signers must possess sufficient "moral suasion to ensure the defendant's presence at trial."  *United States v. Batista*, 163 F. Supp. 222, 224 (S.D.N.Y. 2001) (quoting *United States v. Gotay*, 609 F. Supp. 156, 156 (S.D.N.Y. 1985)).  The other must be financially responsible but does not even need to know her.  *United States v. Hammond*, 204 F. Supp. 2d 1157, 1166 (E.D. Wisc. 2002).  Furthermore, Ms. Wang's co-signers' alleged affiliation with Mr. Kwok does not preclude them from serving as co-signers.  *Id.* at 1167.  Here, all of Ms. Wang's co-signers satisfy at least one of the two necessary conditions to serve as her bond sureties.

In *Batista*, the defendant applied to the court for an order directing that he had complied with the bail conditions imposed by the magistrate judge.  163 F. Supp. at 223.  Specifically, he asked the court to approve his three proffered co-signers and to rule that the government's refusal to approve them had been arbitrary.  *Id.*  As is the case with Ms. Wang, the government there opposed on the grounds that none of the proposed sureties had both the wherewithal to satisfy the bond as well as moral suasion over the defendant.  *Id.*

The court rejected the government's approach.  The three sureties proposed in *Batista* were the defendant's sister, her boyfriend, and the defendant's childhood friend (all of whom lived in Puerto Rico while the defendant lived in New York).  *Id.* at 225.  The court found that only the defendant's sister's boyfriend financially qualified.  *Id.*  However, because the boyfriend represented to the government that he had "'no relationship' with [the defendant] and ha[d] neither seen nor spoken to him since [the defendant] moved to New York from Puerto Rico several years [prior]," the court held that the boyfriend did not have moral suasion over the

7

defendant. *Id.* at 226. Nevertheless, the court approved the boyfriend as a bond-signer on the grounds that

> it may not always be possible to find individuals with sufficient assets to post who also may exert moral suasion over a defendant. A person with moral suasion over the defendant will be able to influence him to appear in court regardless of whether the money at stake is put up by a third party. Therefore, a defendant who presents some individuals with moral suasion and others who are financially responsible may satisfy the requirements of bail.

*Id.*

In *Hammond*, the defendant, a member of the Outlaws Motorcycle Club (the "Outlaws") was "charged, along with five other members . . . with racketeering and drug-related offenses." *Id.* at 1159. The judge ordered the defendant released "if $150,000 bail was posted and other conditions met." *Id.* The "[d]efendant subsequently moved to modify the bail" conditions and "proposed that [it] be reduced to $135,000 and that security be posted by [eight] individuals . . . ." *Id.* at 1159–60.

> The government argued that the defendant was a flight risk because he was a
>
> > member of an enterprise with chapters across this country, Europe, and Australia; that defendant possessed lists of Outlaws chapters and phone numbers at the time of his arrest; that members are expected to harbor fugitive brothers; that fundraisers have been held for defendant; that defendant faces a lengthy prison term; and that other defendants in this and the previous Outlaws prosecution have absconded.

*Id.* at 1165.

The court found this argument unavailing: "The mere opportunity to flee is not enough to justify detention. Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to **require**

8

guarantees against flight." *Id.* at 1166 (emphasis added) (internal quotation marks and citations omitted).

As to the co-signers' ties to the defendant, the government argued the co-signers "lack[ed] substantial ties to the defendant," which divested them of sufficient moral suasion to reasonably assure the defendant's appearance. *Id.* The court rejected this argument as well. Citing *Batista*, the court found that although several of the bail "posters [did] **not personally know defendant, . . . this [was] not an adequate reason to deny release**." *Id.* (emphasis added). "[N]ot everyone posting property or money needs to have strong personal ties to the defendant, so long as there are adequate assurances of financial responsibility on the part of those putting up money and moral suasion over the defendant by **one** or more of those individuals." *Id.* (emphasis added). The court found that the defendant presented sufficient evidence that he had "strong personal ties" to two of the eight co-signers, and thus they "exercise[d] sufficient 'moral suasion' to reasonably assure defendant's appearance." *Id.*

As to the six remaining co-signers, the court noted that each of them was "closely questioned on their motives and were advised of the consequences" and "appear[ed] to be entering into [the] matter with their eyes open." *Id.* at 1167. Moreover, the magistrate judge "ordered a list of additional conditions to assure defendant's appearance." *Id.*

Here, the two-prong requirement of financial responsibility and moral suasion has been met by the set of co-signers Ms. Wang has proffered. One or more of the proposed co-signers are her friends and have moral suasion over her. Others have the financial resources to post collateral to secure her bond. All her proposed co-signers are financially responsible, even if some of them are not wealthy. In fact, those who are less wealthy are at higher risk of financial ruin should Ms. Wang violate her terms of release. Thus, Ms. Wang has complied with the

9

Court's bond conditions and proffered co-signers who are financially responsible and provide moral suasion.

Accordingly, this Court should approve two of Ms. Wang's eight proposed co-signers and execute an order directing that Ms. Wang has complied with her bail conditions.

### B. Alternatively, This Court Should Amend Ms. Wang's Bail Conditions to Eliminate Co-Signers Altogether

In the event the Court does not find that Ms. Wang's proffered co-signers in the aggregate satisfy the two-fold requirement of financial responsibility and moral suasion, the Court should amend Ms. Wang's bail conditions by eliminating the use of co-signers altogether. Failing to do so imposes a financial condition on Ms. Wang that results in her pretrial detention in violation of 18 U.S.C. § 3142(c)(2).

Under 18 U.S.C. § 3142(c)(2), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention" of a defendant.  Further, 18 U.S.C. § 3142(c)(3) provides that "[t]he judicial officer may at any time amend the [bail] order to impose additional or different conditions of release."

In *United States v. Penaranda*, the defendant argued, *inter alia*, that under 18 U.S.C. § 3142(c)(2), "a person who is eligible for bail cannot be kept incarcerated because he fails to meet a financial condition of that bail." No. 00-CR-1251 (RWS), 2001 WL 125621, at *2 (S.D.N.Y. Feb. 13, 2001). He objected that he was being kept in custody because he was "a poor man," contrary to principles of fundamental fairness. *Id.* at *3.  Judge Sweet found that in the situation "where a defendant cannot meet the financial conditions of his bail, . . . the court should consider whether that particular financial condition is a necessary part of the bail conditions to provide reasonable assurance of the defendant's appearance . . . ." *Id.* at *2.

10

As a result, the court modified the defendant's bond requirement from "a $250,000 personal recognizance bond co-signed by his wife, three of his sons, and two other financially responsible persons" to "a $100,000 personal recognizance bond, co-signed by [his] wife and three sons, with $25,000 in cash or a cash equivalent as security." *Id.* at *1, *3. The court also allowed for the possibility that if the defendant found "two financially responsible persons to co-sign the bond, their co-signing [could] be substituted for the $25,000 cash/cash equivalent requirement." *Id.* at *3.

Here, although Ms. Wang is not a defendant of limited means, the upshot of the government systematically divesting her of any co-signer to secure her bond is that she is now unable to comply with the financial conditions of release. As discussed above, she has offered the government security totaling over $1,500,000.00. Her apartment, the cash the government seized, and her two bank accounts is all she has. She has agreed also to have one of her accounts monitored and offered to subject any disbursements to government review and control. She has nothing else to offer financially. Thus, by disapproving all her co-signers, the government's action has turned Judge Parker's legal order into one violative of 18 U.S.C. § 3142(c)(2)—the order now foists a financial condition upon Ms. Wang that results in her pretrial detention.

As such, this Court should exercise its discretion under 18 U.S.C. § 3142(c)(3) and amend Ms. Wang's bail conditions to omit co-signers altogether.[3]

---

[3] If the Court is concerned that such an amendment would fail to reasonably assure Ms. Wang's presence at trial, it need look only to the other bail conditions: she has put up her own residence as collateral; she will be subject to home detention; she will not be in possession of her travel documents; and she will be subject to pretrial supervision and monitored by the government using GPS location monitoring technology. Ms. Wang's bail package—even amended to eliminate the use of co-signers—is sufficiently comprehensive "to reasonably assure [her] presence at trial." *United States v. Weigand*, 492 F. Supp. 3d 317, 318 (S.D.N.Y. 2020). Therefore, this Court is "statutorily obligated to grant [Ms. Wang's] motion." *Id.* at 318–19.

11

## CONCLUSION

For the reasons described herein, Ms. Wang respectfully requests that this Court grant her Motion for an Order Directing She Has Complied with the Terms of Her Bail Conditions and to rule that the government's refusal to approve her bond co-signers has been arbitrary; or, alternatively, to grant her request to amend her bail conditions to eliminate the requirement that she obtain two financially responsible persons to co-sign her bond.

Dated: New York, New York
March 24, 2023

                                              ChaudhryLaw PLLC

By:   */s/ Priya Chaudhry*
       Priya Chaudhry

       147 W. 25th Street, 12th Floor
       New York, New York 10001
       Tel: (212) 785-5550
       Email: priya@chaudhrylaw.com

       Alex Lipman, Esq.
       Lipman Law PLLC
       147 W. 25th Street, 12th Floor
       New York, New York 10001
       Tel: (212) 401-0070
       Email: alexlipman@limpanpllc.com

       *Attorneys for Defendant Yanping Wang*